## DECLARATION OF TRAVIS LEE

I, Travis Lee, Task Force Officer, do hereby declare:

## BACKGROUND/EXPERIENCE

1.      I am a Task Force Officer (hereinafter "TFO") with the Drug Enforcement Administration (hereinafter "DEA") and have been since September 2019.  My current assignment is at the DEA Medford Oregon Resident Office ("Medford RO").  I am also a Detective with the Oregon State Police, and I am assigned to the Criminal Investigations Division Drug Enforcement Section in Central Point, Oregon. I have been employed with the Oregon State Police for more than seventeen (17) years.

2.      My training and experience includes the investigation of numerous major criminal cases including, but not limited to forensic interviewing, interview and interrogation techniques, officer involved shootings, attempted aggravated murder, homicide, felony assault, rape, sex abuse, narcotics / marijuana / hemp investigations, Butane Honey Oil Lab (BHO) Investigations, theft, forgery, burglary, money laundering, background investigations, unauthorized use of a motor vehicle, tampering with witnesses, official misconduct, custodial sexual misconduct, crime scene investigation, acquisition, preservation of evidence to include evidence on computers and cell phones, and training and experience related to crimes involving digital currency, other people and property crimes. I am also Clandestine Laboratory (Clan Lab) certified and attended the two-week DEA Basic Drug Investigation course.  I have also attended annual drug enforcement conferences and have participated in numerous search warrants for trace evidence, stolen property, narcotics, and illegal marijuana grows.

3. My experience includes investigating numerous persons involved in the use, manufacture, and distribution of controlled substances. I have also investigated numerous marijuana cases. I have seized controlled substances and marijuana from many suspects on several occasions during my employment as a Peace Officer. I have had many conversations with people who either sell controlled substances including marijuana or use controlled substances including marijuana to include informants, arrested individuals, jail inmates, and other people in my career. From these people, and based on my training and experience, I have become familiar with the way controlled substances, specifically marijuana and hemp are manufactured, transported, sold, stored, and used in the State of Oregon.

**PURPOSE OF THIS DECLARATION**

4. This declaration is in support of a civil forfeiture complaint *in rem* for forfeiture of the aggregated $16,000.00 United States Currency seized on June 15, 2023, in Medford, Oregon, from a luggage bag belonging to Kenny Sherman Hickson. As discussed below, I believe there is probable cause to believe that the $16,000.00 is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as it constitutes moneys furnished or intended to be furnished by any person in exchange for a controlled substance in violation of 21 U.S.C. § 841, specifically marijuana, a schedule I controlled substance, proceeds traceable to such an exchange, or moneys used or intended to be used to facilitate any violation of 21 U.S.C. § 841(a)(1), specifically the manufacture and distribution of marijuana. This declaration does not include all the facts known to me regarding this investigation, only those sufficient to establish probable cause to seize the

above referenced currency.

## SUMMARY OF THE INVESTIGATION

5. On June 15, 2023, the Medford RO received information from DEA San Diego Airport group, regarding Kenny Sherman HICKSON (hereinafter "HICKSON") who was flying into the Rogue Valley International Medford Airport (MFR) with a connecting flight in Salt Lake City International Airport (SLC) onboard Delta Flight 3819. The information also indicated HICKSON had boarded the plane with a checked bag. Based on the information from the San Diego DEA office, investigators responded to the Rogue Valley International Medford Airport to contact HICKSON in an attempt to further investigate HICKSON's activities.

6. At approximately 12:00 p.m. investigators from the Medford RO, Oregon State Police (OSP), Central Point Police Department and Jackson County Sheriff's Office responded to the Rogue Valley International Medford Airport and established surveillance.

7. Upon arrival of Delta Flight # 3819 from Salt Lake City, Utah, Agents identified HICKSON based upon his driver's license photo, who was entering the terminal by the baggage claim area of the Rogue Valley International Medford Airport and carrying a black checkered backpack. HICKSON was observed waiting by the baggage claim area. Jackson County Sheriff K-9 handler Tom Hohl and his Police K-9 were in the area where bags were being loaded onto the baggage claim belt along with DEA Special Agent (SA) Morgan Barr. SA Barr relayed by telephone to me and other officers, that the Police K-9 had alerted to HICKSON's gold and black colored luggage bag that had been checked in with the other passengers' luggage. The gold and black luggage bag was

returned to the baggage claim belt and officers inside Rogue Valley International Medford Airport observed HICKSON grab the gold and black luggage bag and walk to the outside pick-up area of the Rogue Valley International Medford Airport.

       8.      I observed HICKSON get inside a vehicle marked "UBER". Central Point Police Department (CPPD) Officer Derek Brown conducted a traffic stop on the "UBER" vehicle for a traffic violation near 2300 Biddle Rd., Medford, Oregon. Officer Brown contacted the driver of the "UBER" and I contacted HICKSON who was sitting in the rear passenger side of the vehicle. I identified myself as a law enforcement officer and asked HICKSON if there would be a reason a Police K-9 would alert to his bag at the airport. HICKSON told me "No." I asked HICKSON if there were any drugs or large sums of currency in his luggage bag. HICKSON told me there was not. I asked HICKSON for consent to search his bags and he gave consent. HICKSON got out of the vehicle and opened the rear hatch of the vehicle to grab his gold and black luggage bag. DEA TFO Derek Docken took the luggage bag from HICKSON and began searching the bag. I observed TFO Docken locate U.S. currency in three locations inside the luggage bag. There were two bundles of U.S. currency located in two different pairs of shoes and a third bundle of U.S. currency inside an envelope tucked inside clothing in the luggage bag.

       9.      I asked HICKSON about the U.S. currency in his luggage bag. HICKSON told me that he is a business owner of a "smoke shop" in Nashville, TN. and that he had traveled to Oregon to buy hemp to take back to Nashville. HICKSON asked me if he could call his business partner to send him a receipt for proof. After contacting his partner, HICKSON showed me a receipt on HICKSON's cellular phone

for what appeared to be some type of cannabis product from a business in Merrill, Oregon. The price on the receipt was approximately $4,000.00 and was stamped "paid." I asked HICKSON how much U.S. currency he had in his luggage bag. HICKSON told me he had approximately $11,000.00. I asked HICKSON why he had that currency in his bag if the receipt showed he had already paid for the product. HICKSON told me he had brought the U.S. currency in case he wanted to purchase more hemp. HICKSON showed TFO Docken some additional receipts on HICKSON's cellular phone from 2019 and 2020. HICKSON talked about going to Los Angeles to meet with his business partner but had to come to Oregon first. HICKSON told me that he had a bank receipt for the currency inside the luggage bag. TFO Docken located the bank receipt from Wells Fargo which showed a cash withdrawal for $5,000.00. The Wells Fargo receipt also noted; "Loose currency" - $500.00 and "Strapped Currency" - $4,500.00. This receipt showed the withdrawal date was 6/13/23. TFO Docken photographed the U.S. currency, Wells Fargo receipt, and envelope next to the gold and black luggage bag on the hood of the marked patrol vehicle.

10. DEA TFO Robert Gilinsky searched HICKSON's black checkered backpack, which was in the rear trunk area of the vehicle. The black checkered backpack was the carryon bag HICKSON exited the plane with. TFO Gilinsky located an envelope containing U.S. currency. This envelope was photographed by TFO Gilinsky in the black checkered backpack.

11. TFO Docken told HICKSON the US. currency was going to be seized because it was believed HICKSON was in Oregon to purchase marijuana and then export the marijuana out of the state of Oregon.

12. In my training and experience, I have found it common for marijuana buyers travelling from various East Coast locations to travel to the Medford, Oregon area. Southern Oregon has a climate suitable for growing high grade marijuana and the prices for marijuana are much lower than those on the East Coast. Marijuana traffickers can often triple or quadruple profits by purchasing the marijuana in Oregon and shipping it back to the East Coast. Often, marijuana purchasers will buy last minute tickets once a marijuana deal has been negotiated. Since marijuana proceeds are not allowed to be deposited in the federal banking system, marijuana traffickers often bring the funds intended to purchase the marijuana in cash.

In addition to the above, there were several parts of the interaction with HICKSON that made investigators believe the US currency was brought to purchase marijuana. HICKSON initially told me that he did not have any large amounts of US currency when asked he actually did. The US currency in HICKSON's gold and black luggage bag was in three different locations. Two of the bundles of US currency were in two different pair of shoes and a third stack of US currency was inside an envelope tucked inside clothing to conceal it. HICKSON also had additional US currency in his backpack. This is often done to spread the currency out to help avoid detection from a Police K-9 and or law enforcement officers. HICKSON told me that he was in Oregon to buy hemp to take back to his "smoke shop" in Nashville, and he provided a picture of a receipt from the past showing "paid" on it. HICKSON explained that he already

purchased "hemp" referring to the past but brought more cash in case he wanted to purchase more. Hemp is not as sought after as marijuana, and given the steps to conceal the US currency and untrue statement when asked about the currency in the bag, I believe it was more likely than not, HICKSON was in Southern Oregon to purchase marijuana, not hemp. Hemp is substantially cheaper than marijuana and is also legal in 47 states to include Tennessee. It would not be rational for someone to fly across the country to purchase hemp.

## **CONCLUSION**

13.     Based on the foregoing and my training and investigative experience, I have probable cause to believe that the $16,000 in U.S. Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as it constitutes moneys furnished or intended to be furnished by any person in exchange for a controlled substance in violation of 21 U.S.C. § 841, specifically marijuana, a schedule I controlled substance, proceeds traceable to such an exchange, or moneys used or intended to be used to facilitate any violation of 21 U.S.C. § 841(a)(1), specifically the manufacture and distribution of marijuana.

14.     I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

EXECUTED this 12th day of December 2023.

s/ *Travis Lee*
TFO Travis Lee
Task Force Officer
Drug Enforcement Administration
